STATE OF NORTH CAROLINA v. RANDOLPH QUICK

No. 9018SC1346

(Filed 7 July 1992)

**1. Evidence and Witnesses § 1239 (NCI4th) — statement not result of interrogation — seized evidence not tainted**

Evidence found in a car defendant had borrowed and failed to return was not rendered inadmissible by a statement made by defendant before he was advised of his rights where an officer told defendant at his apartment that the police wanted to know where the car was located, defendant stated that he would take officers to the car, defendant was then advised of his rights, and defendant thereafter directed officers to the car, since the statement made by defendant before he was advised of his rights was made voluntarily and not in response to questions by the officers.

**Am Jur 2d, Search and Seizure § 46.**

**2. Evidence and Witnesses § 538 (NCI4th) — merchandise price tags — relevancy**

Merchandise price tags recovered from an automobile defendant borrowed and failed to return were relevant and admissible to prove charges of breaking or entering of a store, larceny and possession of stolen property where the co-owner of the store identified the tags as ones previously attached to store merchandise.

**Am Jur 2d, Burglary § 50.**

**3. Burglary and Unlawful Breakings § 119 (NCI4th) — breaking or entering, larceny, possession of stolen property — sufficiency of evidence**

The evidence was sufficient for submission to the jury on charges of breaking or entering of a store, larceny of merchandise therefrom, and possession of stolen property where it tended to show that defendant borrowed a car on 25 February and failed to return it; a sporting goods store was broken into the night of 26 February or the morning of 27 February and merchandise was taken therefrom; two granite rocks were found in the store; defendant led police to the missing car parked at a motel; a granite rock covered with glass fragments

STATE v. QUICK

[106 N.C. App. 548 (1992)]

and merchandise price tags from the store were discovered in the car; and defendant had checked into the motel on the morning following the break-in and had left later that day.

**Am Jur 2d, Automobiles and Highway Traffic § 349.**

**4. Automobiles and Other Vehicles § 134 (NCI3d) — unauthorized use — sufficiency of evidence**

The evidence was sufficient to support defendant's conviction of unauthorized use of a vehicle where it tended to show that the owner of a car gave defendant permission to drive the car for the limited purpose of going to purchase beer and stopping to visit his sister and defendant never returned the car. N.C.G.S. § 14-72.2.

**Am Jur 2d, Automobiles and Highway Traffic § 349.**

**5. Burglary and Unlawful Breakings § 141 (NCI4th) — recently stolen property — instruction supported by evidence**

The evidence supported the trial court's instruction on the doctrine of possession of recently stolen property where it tended to show that price tags which had been attached to clothing stolen during a break-in of a store were found within two days after the crimes in a car defendant had borrowed and failed to return.

**Am Jur 2d, Burglary § 54.**

**6. Criminal Law § 1095 (NCI4th) — aggravating factor — prior conviction — statement by prosecutor — defendant's argument for concurrent sentence**

The trial court did not err in finding the aggravating factor of a prior conviction based upon the prosecutor's oral recitation of defendant's record where defendant contested only his parole status at a particular time and whether his new sentence should be concurrent with or at the expiration of an existing sentence, since defendant may not argue that a new sentence should be concurrent with his earlier sentence and then successfully argue that there is no earlier sentence.

**Am Jur 2d, Criminal Law § 535.**

**7. Criminal Law § 1680 (NCI4th) — modification of sentence in term — consecutive rather than concurrent**

The trial court did not err by modifying defendant's sentence imposed during the same term to provide that the sentence would run at the expiration of any sentence then required to be served by defendant after the court received additional information in defendant's presence in open court.

**Am Jur 2d, Criminal Law § 580.**

APPEAL by defendant from Judgments entered 11 and 12 September 1990 by *Judge Preston Cornelius* in GUILFORD County Superior Court. Heard in the Court of Appeals 25 September 1991.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Francis W. Crawley, for the State.*

*Assistant Public Defender Stanley Hammer for defendant appellant.*

COZORT, Judge.

Randolph Quick was convicted of felonious possession of stolen goods, felonious breaking and entering, felonious larceny, and the unauthorized use of a conveyance. Defendant received a total sentence of twelve years in prison. On appeal defendant challenges the following: (1) the trial court's denial of a motion to suppress a statement made by defendant; (2) the admission of evidence relating to certain merchandise price tags; (3) the trial court's denial of defendant's motion to dismiss all charges based on the insufficiency of the State's evidence; (4) the trial court's instruction to the jury on the doctrine of recent possession; (5) the trial court's finding as an aggravating factor that defendant had a prior conviction punishable by more than 60 days' confinement when the District Attorney did not tender certified copies of the prior convictions; and (6) the trial court's resentencing defendant on the day subsequent to his initial sentencing due to a misunderstanding about defendant's parole status. We find that defendant received a fair trial and sentencing free from prejudicial error.

The State's evidence presented at trial tended to show that, on the evening of 25 February 1990, defendant borrowed a 1975 Camaro automobile from Michael Golden so defendant could drive to a nearby store to purchase beer and then stop by his sister's

house. Mr. Golden testified the defendant did not return with the car that evening or the following day. Mr. Golden reported the matter to the police, and on 27 February 1990, he filed a complaint against the defendant. A warrant was subsequently issued for defendant's arrest.

High Point Police Detective J. M. Long testified that, on 28 February 1990, he went to Randolph Quick's apartment. Defendant answered the door and Long informed him of the outstanding arrest warrant for the unauthorized use of a motor vehicle. Defendant invited Detective Long and his partner into the apartment. Defendant was extremely talkative. Detective Long told the defendant the police wanted to know where Mr. Golden's car was located. In response, defendant offered to take the officers to the car. Defendant was then advised of his rights. At defendant's direction, the police officers then drove to the Best Inn of America in Greensboro. The automobile was found unlocked and parked in a parking space in front of one of the motel rooms. The police performed an inventory search of the automobile which uncovered several plastic coat hangers, three or four price tags from sporting clothes, black gloves, a tire tool, some other price tags and a large granite rock covered with glass fragments. When the trunk was unlocked, the police discovered more coat hangers and price tags.

Sergeant A. C. Yow of the Guilford County Sheriff's Department testified he was assigned to investigate a break-in at Stewart Sporting Goods which occurred on 27 February 1990. The High Point Police Department had been alerted to this break-in; officers gave the price tags found in the Camaro to Sergeant Yow. Yow then displayed the tags to Jerry McCandless, the proprietor of Stewart Sporting Goods.

McCandless testified he was part owner of the sporting goods store. He stated that on 27 February 1990 he found the store's front door had been broken and some items had been removed. He noticed two granite rocks on the floor inside the store. Mr. McCandless identified the tags which were in police custody as price tags used by Stewart Sporting Goods. The tags were identified as originating from the store since the handwriting matched other tags remaining in the store, and because the cost codes on the recovered tags were unique to Stewart Sporting Goods.

The State offered the motel register to show that either defendant or someone posing as defendant checked into a room at

6:28 a.m. on 27 February 1990, and checked out at 2:00 p.m. that same day. The defendant offered no evidence.

**[1]** Defendant first asserts on appeal that the trial court committed reversible error in denying defendant's motion to suppress the evidence found in Mr. Golden's automobile. Defendant argues the court should have suppressed the evidence gathered as a result of a statement he made to Detective Long and his partner when the officers first arrived at defendant's apartment. Prior to trial, the trial judge conducted a *voir dire* hearing to determine whether the statements given to police concerning the car's location and the evidence gathered from the automobile were admissible. It is well-settled that findings of fact made by a trial judge following a voir dire hearing on the voluntariness of a confession are conclusive on appeal if the findings are supported by competent evidence in the record. *State v. Jackson*, 308 N.C. 549, 569, 304 S.E.2d 134, 145 (1983), *vacated on other grounds*, 479 U.S. 1077, 94 L.Ed.2d 133 (1987). The trial court's conclusions of law based on the findings, however, are reviewable by the appellate court to determine whether they are supported by the facts. *State v. Thomas*, 310 N.C. 369, 376-77, 312 S.E.2d 458, 462 (1984). The reviewing court must examine the totality of the circumstances when determining whether the statement in question was made voluntarily. *Jackson*, 308 N.C. at 574, 304 S.E.2d at 148.

In the present case, the findings of fact indicate upon the arrival of the police, defendant invited the officers into his home. He was notified of the arrest warrant. Immediately, defendant told the officers that he had some information for them unrelated to the missing car. The officers said they wanted to know the location of Mr. Golden's car. The defendant stated he would "take [them] there." At that time, defendant never revealed the location of the car to the police. The officers then advised defendant of his rights. We agree with the trial court's conclusion that defendant's statement given before his rights were read to him was made voluntarily and not made in response to any questions asked by the officers. Furthermore, the statement is inconsequential. The trial court did not err in denying defendant's motion to suppress.

**[2]** Defendant next contests the admissibility of the merchandise price tags recovered from Mr. Golden's auto. Defendant contends the admission of the tags constituted prejudicial error because the tags could not be conclusively linked to the merchandise which

was stolen. We disagree. All relevant evidence is admissible. N.C. Gen. Stat. § 8C-1, Rule 402 (1988). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1988). "Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." *State v. Wingard*, 317 N.C. 590, 597, 346 S.E.2d 638, 643 (1986). The merchandise tags introduced in this case were relevant to prove the charges of breaking and entering, larceny, and the possession of stolen goods. And, the tags were identified by the store's co-owner as being ones which had previously been attached to store merchandise. Since the evidence is relevant, and because defendant has failed to prove any prejudice pursuant to N.C. Gen. Stat. § 15A-1443(a) (1988), we find no error with respect to its admission.

[3] The defendant also asserts the trial court erred in denying defendant's motion to dismiss all charges relating to the stolen property. The standard for ruling on a motion to dismiss is "whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The test for sufficiency of the evidence is the same regardless of whether the evidence is circumstantial or direct. *State v. Earnhardt*, 307 N.C. 62, 68, 296 S.E.2d 649, 653 (1982). When a motion to dismiss involves circumstantial evidence in a case:

> [T]he court must decide whether a reasonable inference of the defendant's guilt may be drawn from the circumstances shown. If so the jury must then decide whether the facts establish beyond a reasonable doubt that the defendant is actually guilty.

*State v. Triplett*, 316 N.C. 1, 5, 340 S.E.2d 736, 739 (1986) (citation omitted).

The offense of felonious breaking and entering consists of the (1) breaking or entering (2) of any building (3) with the intent to commit larceny therein. *State v. Litchford*, 78 N.C. App. 722, 725, 338 S.E.2d 575, 577 (1986). Larceny requires that the defendant

(1) take the property of another, (2) carry it away, (3) without the owner's consent, and (4) with the intent to deprive the owner of his property. *State v. Reeves*, 62 N.C. App. 219, 223, 302 S.E.2d 658, 660 (1983). Possession of stolen property occurs when one is in possession of personal property having a value greater than four hundred dollars ($400.00) which has been stolen, the possessor knows or has reasonable grounds to know the property was stolen, and the possessor acts with a dishonest purpose. *State v. Martin*, 97 N.C. App. 19, 25, 387 S.E.2d 211, 214 (1990). The evidence in this case, both circumstantial and direct, is sufficient for a jury to draw a reasonable inference of the defendant's guilt. Defendant borrowed Mr. Golden's car on 25 February 1990, and did not return it. The sporting goods store was broken into either late in the evening on 26 February, or early in the morning on 27 February 1990. The defendant led the police to the car where price tags, plastic hangers, and a granite rock were discovered. The motel register revealed defendant had checked into a room on the morning following the robbery and had left later that day. The evidence presented by the State was sufficient to support a reasonable inference of guilt with respect to the stolen property offenses. We conclude the trial court did not err in denying defendant's motion to dismiss the charges.

[4] The defendant additionally contests the trial court's denial of defendant's motion to dismiss the unauthorized use of a conveyance charge. A person commits the offense of the unauthorized use of a conveyance if he takes or operates the motor-propelled conveyance of another without his express or implied permission. N.C. Gen. Stat. § 14-72.2 (1986). Defendant argues that since Mr. Golden originally gave him permission to use Golden's car and never specified when the car should be returned, the charge should have been dismissed. This argument is without merit. The evidence shows Mr. Golden gave defendant permission to drive the car for the limited purpose of going to purchase beer and stopping to visit his sister. Defendant never returned the car. The court therefore did not err in denying defendant's motion to dismiss the unauthorized use of a conveyance charge.

[5] Defendant next contends the trial court erred in instructing the jury on the doctrine of recent possession. For an inference to arise that certain property has been stolen, the State must prove: (1) the property was stolen, (2) the stolen property was subject to the defendant's control and to the exclusion of others

though not necessarily found in defendant's hands or on his person so long as he had the power and intent to control the property; and, (3) the possession was recently after the larceny. *State v. Maines*, 301 N.C. 669, 674, 273 S.E.2d 289, 293 (1981). It is not necessary that the stolen property actually be in the hands of the accused. It is sufficient if it is shown to be under his exclusive personal control. *State v. Foster*, 268 N.C. 480, 485, 151 S.E.2d 62, 67 (1966). In order to comply with N.C. Gen. Stat. § 15A-1232 (1988), the trial court has a duty to instruct on every substantial and essential feature of the case. *State v. Jones*, 300 N.C. 363, 365, 266 S.E.2d 586, 587 (1980). Therefore, with respect to the stolen property charges, the legal principle of possession of recently stolen property constituted a substantive feature which the court had a duty to discuss in its jury instructions. The facts taken in the light most favorable to the State supported an instruction on the recent possession of stolen property. We thus find no merit to defendant's contention.

In his last two assignments of error, defendant challenges the sentence imposed by the trial court. First, defendant contends the trial court erred in finding as an aggravating factor that defendant had a conviction for more than 60 days, when the finding was based only on the in-court statement of the District Attorney. Second, the defendant challenges the trial court's modification of the sentence to require that it run at the expiration of any sentence then being served by defendant. We find no error.

When the jury returned its verdicts of guilty on 12 September 1990, the State's attorney, Assistant District Attorney Richard Lyle, was in another courtroom handling another case. The trial court proceeded with sentencing, with another Assistant District Attorney, Mr. Cole, representing the State at defendant Quick's sentencing hearing. Defendant Quick was represented by Mr. Stanley Hammer, who had represented defendant at trial. The following transpired:

THE COURT: State wish to be heard?

MR. COLE: . . . I would like to inform the Court on January 29, 1990, Judge, the defendant was convicted of felonious breaking or entering and larceny and received a six-year sentence committed to the State Department of Corrections. That was to begin at the expiration of a three-year sentence that he was then serving, Judge. He's also been convicted August

20 of '86 of larceny and got six months in that case, Your Honor. State would ask the Court to find aggravating circumstances as a result of his prior convictions.

MR. HAMMER: Your Honor, I apologize. I didn't realize we were dealing with the sentencing.

I would say, in terms of mitigating factors, for sentencing, I would submit to the Court that the defendant falls within having made an early confession in wrongdoing inasmuch as he led the police officers to the car and cooperated with them in that endeavor and was cooperative throughout. I think he should have the benefit of that mitigating factor.

With respect to the aggravating factors that Mr. Cole has referred to, I have not seen copies of those judgments. I can't stipulate to that.

THE COURT: Okay. If you'll stand up, Mr. Quick.

Anything you wish to say, sir?

THE DEFENDANT: No, sir.

THE COURT: . . . Judgment of the Court is he be imprisoned assigned to work under the supervision of the State Department of Correction for a period of ten years. Give him credit for any time spent in custody awaiting trial.

Court would find as an aggravating factor that defendant has a prior conviction punishable by more than 60 days' confinement. Find no mitigating factors. Find factor in aggravation outweighs any mitigating factors.

* * * *

MR. HAMMER: File an oral motion at this time in open court.

THE COURT: Okay. Notice of appeal was given in court. Set the usual appeal entry.

MR. HAMMER: Thank you.

The next day, 13 September 1990, Mr. Lyle, who had prosecuted the defendant, appeared in court to request that the judge modify the sentence of the preceding day to provide that it run

at the expiration of the sentence then being served by defendant. The following transpired:

MR. LYLE: Your Honor, with the Court's permission, Mr. Randolph Quick was sentenced yesterday. There was some talk prior to his trial about his status at the time of arrest. As I understand—I was not here for the sentencing hearing, but, as I understand it, there was either no mention or some mention about his status at the time of the crimes that were alleged to have occurred and he was convicted of.

And, Your Honor, with the Court's permission, I have contacted the Department of Corrections. And based on the report that I got from them, I would ask the Court to reconsider, as far as the sentencing, not the actual sentence, but whether the Court would consider running that at the expiration of the sentence he's now serving.

Your Honor, this defendant was serving a sentence with the Department of Corrections when he was brought in to Guilford County Superior Court the week of January 29, 1990. On January 31, the date of the commitment, he received a six-year active sentence to run at the expiration of the sentence he was then serving.

According to the Department of Corrections, Your Honor, he was paroled on February 7th, they being unaware at that time that he had received a new sentence approximately a week before that.

On February the—excuse me. His parole was revoked based on an oral representation that he had received a new sentence. On February 23rd, Your Honor, the parole board rescinded his revocation to probation because he did not in their file have a copy of the commitment showing that he had received the six-year sentence.

I would point out to the Court, Your Honor, that that was two days before the first alleged incident in this matter. He had been released sometime after February 23rd on parole and his status was a two-day parolee at the time he committed the first offense that he was convicted for.

Subsequent to that time, Your Honor, according to them, he was again revoked. His parole was revoked on July 18,

1990, and he's now serving six years which was the sentence in High Point handed down in January.

I would ask, Your Honor, based on the fact that he had been paroled only two days and was on parole to find that that was an additional aggravating factor in this case and that the Court consider running the 12-year sentence imposed yesterday at the expiration of the sentence he's now serving.

MR. HAMMER: Your Honor, first of all, I'm not sure of what the basis of Mr. Lyle's motion is. I really don't know, frankly, whether it's in the nature of a motion for appropriate relief or what. I haven't heard anything here today that would justify changing the sentence.

The prosecution has had several months with this case, they're well familiar with Mr. Quick's file, and they certainly could have come in here yesterday and made the same arguments. Of course, the arguments that they make today are not supported.

Mr. Lyle stands up and says that he has heard this and that from the parole commission, and I'm sure he called them, and I'm sure he did talk with them, but in view of all the conflict and question about the status of Mr. Quick's status in the correctional system, I think it would be inappropriate to enhance his sentence at this time based upon what somebody at the Department of Correction told Mr. Lyle on the telephone.

They told — he told you that they told him that they had made a mistake in terminating him originally. I don't know when they made the mistake. They might have made a mistake this morning.

The point is it seems to me that we had sentencing yesterday and that was the time to take care of all of this.

Second thing I would say, Your Honor, if Your Honor is going to hear the motion and act on it, is I fail to see how this can possibly inspire confidence in the judicial process. And I say this with all due respect to the Court on behalf of my client and myself. You've been more than fair, bent over backwards in this trial, and we appreciate this. And then for Mr. Quick to have to come back in the next day to be resentenced, it seems to me that this cannot inspire confidence

in the judicial process of our correctional system, especially in view of the fact that Mr. Quick has a lawsuit against the district attorney and the correctional system and various officials.

THE COURT: Mr. Quick, anything you want to say?

THE DEFENDANT: Yes, Your Honor. With all respect to Mr. Lyle—and like my attorney said, I've been sentenced. And all those dates that Mr. Lyle gave, all that information is incorrect. I have documentation of everything that I've gone through within the last ten months. You know. And it's not fair.

But I'm not going to argue here today about it. You do whatever you want to do. But do the fair thing. Because it will all come out in the end. Thank you.

THE COURT: Well, I hope that they can get your situation straightened out as to what your actual status is with the Department of Correction.

According to the judgment yesterday, I was under the impression the evidence in the case was you had been released and you were visiting the person involved in the matter and had no knowledge that you were on parole or had—

THE DEFENDANT: I was not on parole, sir. Excuse me.

THE COURT: Well, maybe that's correct. And if it is, there will be no problem. But the Court—if, in fact, you are serving time, then the Court meant for the sentence to run at the expiration of any time you're presently serving. If you're not serving time, then it's simply the 12-year period the Court has indicated.

MR. COLE: Your Honor, I'd like to get in the record, Judge, when the jury came back yesterday—Your Honor well knows Mr. Lyle tried the case. When the jury came back yesterday, I was up here doing pleas. Mr. Lyle was down in juvenile court and could not get up here and Your Honor wanted to go ahead with sentencing procedure. I just read what record I had and told you about this six years, nine years, and three-year sentence he was currently serving. I did not know all the ins and outs about this parole release and him simply on parole. I didn't mislead the Court, Judge. I just didn't have all the facts Mr. Lyle had. I didn't try the case. I didn't have

all the ins and outs Mr. Lyle just submitted and he wanted to be heard and couldn't be heard and we ask for the modification today.

THE COURT: Court intended, if he was in fact serving time in the Department of Correction it would run at the expiration, and the Court would modify the judgment to reflect that. But if he's not serving time, then it would be simply a 12-year sentence as the Court previously imposed.

[6] The defendant contends that the trial court erred by finding an aggravating factor where the only evidence of the defendant's record is the prosecution's oral recitation of defendant's record, and the defendant did not stipulate to the convictions recited by the prosecution. In *State v. Canady*, 330 N.C. 398, 410 S.E.2d 875 (1991), our Supreme Court considered a similar situation. There, the prosecution told the court that the defendant had prior convictions of felonious possession of marijuana, felonious possession of LSD, discharging a firearm into an occupied motor vehicle and escape from the Department of Corrections. *Id.* at 399, 410 S.E.2d at 876. The defendant's attorney responded, "[t]hese charges and convictions now against him are out of character and not consistent with what he's been involved in the past." *Id.*

Our Supreme Court held there was insufficient evidence to support the aggravating factor of prior record. The Court stated:

We do not feel that a defendant's silence while the prosecuting attorney makes a statement should support an inference that the defendant consented to the statement. Nor do we feel that the argument by the defendant's attorney, that the things with which he was charged in this case are not consistent with his past involvements, should be taken as a consent to the making of the statement by the prosecuting attorney. Rightly or wrongly, the court was considering the matters about which the prosecuting attorney had spoken and the defendant had the right to argue the matters without being held to have admitted them.

*Id.* at 400, 410 S.E.2d at 877.

We find the facts in this case distinguishable from *Canady* and thus reach a different result. The defendant's attorney refused to stipulate to the prior convictions on the first day of the sentencing proceedings. It is clear from the record of the second day's

STATE v. QUICK

[106 N.C. App. 548 (1992)]

sentencing proceedings that, notwithstanding defense counsel's previous refusal to stipulate to the defendant's record, the only factual issues were the specific time sequence of the defendant's prior convictions and his parole status at the time of his arrest and conviction. We cannot read *Canady* to mean there is insufficient evidence of a prior conviction where, as here, the defendant contests only his parole status at a particular time and whether his new sentence should be concurrent with or at the expiration of an existing sentence. Surely the law is not such that a defendant can argue, on the one hand, that a new sentence should be concurrent with his earlier sentence, and then successfully argue, on the other hand, that there is no earlier sentence. We do not find the law in such a state. We find no error in the finding of the aggravating factor.

[7] We now turn to defendant's contention that the trial court erred by modifying defendant's sentence to provide that the sentence would run at the expiration of any sentence then required to be served by defendant. Until the expiration of the term, the orders and judgment of a court are *in fieri*, and the judge has the discretion to make modifications in them as he may deem to be appropriate for the administration of justice. *State v. Edmonds*, 19 N.C. App. 105, 106, 198 S.E.2d 27, 27 (1973). To this end, the trial judge may hear further evidence in open court, both as to the facts of the cases and as to the character and conduct of the defendant. *Id.* The trial court in this case received additional information in defendant's presence in open court. The trial judge stated his original judgment was based upon the impression that defendant was not presently subject to any other sentence, and if defendant was in fact subject to any sentences, the judge "meant for the sentence to run at expiration of any time [defendant is] presently serving." We find no error in the trial court's decision to modify the judgment to impose defendant's sentence at the expiration of his current sentence.

No error.

Judges ARNOLD and LEWIS concur.